The next case on the call of the docket is Agenda No. 8, Case No. 132101, Greenswag v. Lieberman Management Services, Inc. Is the attorney for the appellant ready to proceed? Yes, sir. Good morning, counsel. Please proceed. Your Honor, good morning. May it please the Court, counsel. My name is Paul Castiglione, and I represent the appellant, Deborah Greenswag, in this case. Ms. Greenswag is the administrator of the estate of the late Mr. Friedman, who in 2016 was a condo seller. And along with having to sell his condo, one statutory requirement under Section 22.1 of the Condo Act was that Mr. Friedman had to obtain various documents, which I will refer in the argument to Section 22.1 documents. Now, these are basic business documents, current and anticipated capital expenditures of the association, assets in the reserve fund, insurance coverage requirements, lawsuits, information on lawsuits, et cetera. In this Court's decision in Channon, it was held that Section 22.1 of the Condo Act was enacted for the benefit of condo buyers. And one of the ways buyers benefit is by this requirement that sellers have to obtain these 22.1 documents and provide them upon demand. And they provide essentially, if you're going to buy a condo, you're essentially buying into the HOA, the Homeowners Association. This is a way to see how sound and how grounded the HOA is. But those 22.1 documents are merchandise under the Consumer Fraud Act, and the provision of them is a service under the Consumer Fraud Act. Section 2 of the Consumer Fraud Act prevents unfair and oppressive business practices. And Section 10A of the Consumer Fraud Act provides for a civil action. So what we have are legislatures provided an express statutory remedy that applies here. Defendants, in this case, engaged in an unfair business practice to plaintiff and others in what's essentially a captive market when it sold 22.1 documents for an amount far in excess of, and I'm going to quote the exact language, a reasonable fee covering the direct out-of-pocket cost for providing such information and capital. Of course, plaintiff's unfair business claim rests on far more than the allegation of an exorbitant charge. In the Robinson v. Toyota Motor Credit case, this Court set forth three factors necessary to plead and prove such a claim. Also, Robinson essentially provides a limiting factor for unfair business practice claims predicated on a statutory violation. Counsel, in this case, I know that the appellate court mentioned Robinson, but did they go into an analysis pursuant to Robinson, the factors in Robinson? They did not, Your Honor. They mentioned Robinson.  They absolutely should have. I mean, if I recall, they mentioned in the quote of the language, and I think it's in the circuit court opinion as well, that an exorbitant price by itself is not enough to buttress an unfair practice claim. But the factors go into far more than that, and we allege all three factors. Robinson doesn't require necessarily all three factors to be pled and approved, or proved, I should say, but it depends on the degree to which one or more of the factors are met would determine that. But we pled all three, and the three factors, I'll just list them simply. The first factor is, does the unfair business practice offend public policy? Second practice is the unfair – second factor, excuse me. Does the unfair business practice, is it immoral, unethical, oppressive, or unscrupulous? And the third factor, did it cause substantial injury? Now, under the third – we have alleged that the practice here, the charge of $475, offends public policy. There are three sources of public policy, the Illinois Constitution, the Illinois statutes, and decisions from this court and the appellate court. And here, the charge – well, the $475 charge goes far beyond a reasonable fee for covering direct out-of-pocket costs. That affects two things, I think. Affordability for the condo sellers, obtaining that. The idea is supposed to be essentially what the cost was of reproduction. Counsel, at the end of the day, the question we're really trying to resolve is whether or not that $475 fee is an unreasonable fee, isn't it? That's correct. And you maintain it's unreasonable for what reason? In light of the fact that you've got Shannon, which has made a very clear decision about whether or not a seller can bring an action. Right. And secondly, in light of the amendment to Section 22.1. Right. Do you still take the position that that's an unreasonable fee? I do. I do. Well, it's unreasonable because it has to be tied – first of all, the decision of reasonability. And let's go back to the circuit court found unreasonable to be ambiguous. We don't think it's ambiguous at all. We think it's very clear. It may be a question that a jury or finder of fact would have to decide what's reasonable, but it should be tied to the cost of actually reproducing the documents. And these are documents that the property manager, Lieberman, keeps in the ordinary course of business. It's bylaws. It's the financial documents. They already have the documents. All they have to do is reproduce them, which could be as simple as putting them in a PDF format and emailing them to the different condo owners. $475 seems far excessive for that. Not to mention the fact we've also argued in our brief that there's a double-payment at play here. These condo sellers paid association fees every month. Those association fees financed the operation of the management company and the homeowners association and led to the production of the very documents at issue, which were part of the normal course of business. So, no, we feel we've properly alleged that it is unreasonable. Didn't the seller, though, in this case, have a quick turnaround? They said they needed them within 48 hours. And isn't that then triggering? In the record, it was six days, Your Honor. But in our view, it shouldn't have made any difference whether it was six days or 48 hours or a month. They've already paid. So there's a double payment here. And by the very nature of double payment, making someone pay twice for the same thing is unfair and oppressive. So, no, I acknowledge it was a rather short turnaround, six days, but I don't think that should have made any difference. And addressing the elephant in the room, which is Channon, Channon simply held that there's no implied private right of action under Section 22.1. But Channon also acknowledged that the reasonable fee under 22.1 is something that's the law. The HOA or its agent should not be able to charge any more than that. Now, the problem here is, you know, okay, Channon said there's no private right of action. This is because the statute is for the benefit of condo buyers. That's true. But I think when courts don't recognize an implied private right of action, it makes it all the more incumbent to recognize the causes of action that the legislature has actually recognized. And here, that would be Section 10A of the Consumer Fraud Act. And Channon, as I said, is also a source for the public policy here that the cost of the charge should be limited to a reasonable fee. I want to talk a little bit about 22.1A, which compels condo sellers to purchase these documents in the first place. It creates a captive market. It's not as though a condo seller can go down the street or go to where it used to be the reporter's office, I guess it would be the county clerk's office, at least in Cook County, and try to cobble together and find these different documents, which is interesting because the defendant actually, at page 23 of their brief, argued that's what could have happened here, that they should have been able to get these documents elsewhere. And there's two problems I see with that argument. Number one, it's at odds with the fact that we're here on a 2-6-15 motion. That is not pledging our complaint. They're going far afield, saying you should have been able to get it elsewhere. Maybe even worse, it's at odds with Section 22.1, which says that, no, the exact language, shall obtain, that's the phrase in 22.1, condo sellers shall obtain from the HOA or its agent these documents. It seems to me it runs opposite of their argument. You can't go and try to find this at the county clerk's office. You have to get it from the owner, I'm sorry, from the HOA. Now, what's the public policy of that? Standardization, completeness, uniformity, making sure all prospective condo buyers have access to the same documents, and the linchpin to make that all work was the affordability by limiting the fee that was charged in the first place in 22.1c. You had one other thing about that. The legislature didn't even have to acknowledge this. They didn't have to even deal with the cost issue if they didn't want to. Nothing says they have to set a price, but they did set a price, and they set it for a reason. And I think that's the public policy of the state. That's the policy that this charge offends. So we feel we've pled the first Robinson factor. So, counsel, is it correct that you concede that there is no private right to a cause of action under 22.1, but you're pursuing this under the Consumer Fraud Act, right? Absolutely, Your Honor. And so what are we to consider under the Consumer Fraud Act, and how have you met your burden under that? Well, I said we've pled facts to establish the three Robinson factors, which, as I said before, is a limiting factor on when a prospective plaintiff under the Consumer Fraud Act alleging an unfair business practice claim can predicate that claim on a violation of the statute. We showed that it offends public policy. We showed that it was an oppressive charge because, again, captive market, no reasonable alternative. Despite defendant's arguments, there was not an alternative place to be able to purchase these documents. And I might add, under real estate contracts, including this one, as I believe it's set forth in Exhibit F of the complaint, after acceptance, the seller had five days to get these documents to the buyer. And it kind of makes sense. If the documents are there... I'm sorry, counsel. So the appellate court looked at Midwest Medical, right? They did. And there are, in that case, they talked about the various factors that must be shown in order to establish a claim under the Consumer Fraud Act. But the part of Midwest Medical that they cited was the part where the court addressed whether an implied private right of action could be filed under the Clerk of Courts Act. And that was the problem. And I'll jump ahead a little bit. That was one of the problems with the appellate court decision below. And I think in our PLA, we described it as a catch-22. Basically, the appellate court said you can't bring an implied right of action under 22.1 under Channon. And because you can't, you can't bring this express one under the Consumer Fraud Act, which left Ms. Greenswag and others similarly situated, you know, essentially out in the cold with no remedy at all. And also, it sets up a situation where future HOAs and their agents can charge whatever they want without any recourse for condo sellers. The last Robinson factor was did this cause injury? We say yes. It was $475 for a charge that should have been de minimis, if anything at all. Now, let's see here. Discuss the appellate decision. You know, one thing I would add about that. Defendant is not leading an attempt to defend this decision, Your Honor. They acknowledge it and essentially concede the point that it cannot stand. They made the point it's a judgment and this court reviews the judgment, not necessarily the rationale. They made no attempt to defend the rationale. In their brief, defendant relied on a Seventh Circuit case, Horst. I'd like to talk about that a little bit. Now, in Horst, it was the Seventh Circuit's duty to attempt to determine and apply what Illinois substantive law would be as determined by this court. The problem with Horst is that it got three essential points wrong about Illinois law. First, the Seventh Circuit, much like the appellate court below, conflated plaintiff's consumer fraud claim with a private right of action under Section 22.1. They're very different. As I said, the Consumer Fraud Act claim, to be successful, has to rest on pleading and proof of the Robinson factors. Again, Horst, again like the decision, appellate decision below, only gave a passing reference to Robinson and didn't analyze the factors. But I think the most important point I want to make about Horst is that it neither cited nor applied this court's decision in Landau v. Landau, case of 1951. One of the points the court made in Horst was, well, under Illinois agency law, a principal can only, you know, an agent can't necessarily be liable for the acts of a principal. And that makes sense as far as it goes. But Horst goes far, I'm sorry, Landau goes farther. It says, an agent is liable when the agent takes some active part in violating a duty the principal owes to a third person. That's this case. The duties under 22.1A and 22.1C are from the HOA to condo sellers like Mr. Friedman. But the defendant essentially took an active role. They were the ones who charged for, who kept the 22.1 documents. They're the ones who charged condo sellers for those documents. They took an active role. And under Landau, they can be held liable for a Consumer Fraud Act violation. In fact, I would go so far as to say I don't think Landau and Horst can be squared. Landau is a decision of this court. I think it's right. I think it's good law. I think it promotes accountability. I think it not only promotes accountability, but proper enforcement of the Condo Act in this case. I'd like to spend a little bit of time talking about the circuit court ruling, which we also think is an error. The circuit court initially denied defendant's motion to dismiss the Consumer Fraud Act claim, but then later reconsidered and dismissed it. We feel that was an error. In reaching this decision, the court placed much weight on a legislative amendment to Section 22.1 that was signed into law in May of, May 27, 2022, which went into effect January 1, 2023. This legislative amendment argument is a red herring for several reasons. First of all, plaintiff paid the fee in 2016, seven years before the legislative amendment went into effect. And second, and more importantly, I think, the amendment left intact the language in Section 22.1C that condo sellers could only be charged a reasonable fee to cover direct out-of-pocket costs for providing the documents. The only difference between the version prior to January 1, 2023, and the one after January 1, 2023, is that the amended version states that a reasonable fee may not exceed $375, plus a $100 charge for a rush fee. Now, I would draw an analogy with that amendment, how does that work? It reminds me in some ways of the relationship between, in statutes, between statutes of limitation and statutes of repose. You could have a personal injury case where a statute says you have to bring the lawsuit within two years of discovery of the injury. But, no more than four years after the injury itself. Two different concepts. That's what we have here. You have to charge, you can only charge a reasonable fee for Section 22.1 documents, but you can't charge more than $375. It's an hour limit. And it should not be, and what the trial court, the circuit court, took to mean is, well, that's your reasonable fee. And that's just a poor reading of the, I think, well, respect, a poor reading of the statute. And I think it makes the reasonable fee language subterferous, which courts obviously should not do. And I would note, Chandon was not ambiguous on this issue. Chandon came out and said, and I quote, Finally, subsection C establishes a ceiling for the fee sellers may be charged. To obtain that information, this fee must be, quote, reasonable, and reflect the, quote, direct out-of-pocket costs for providing such information and copy. So the reasonable fee, direct out-of-pocket costs, is not capable of multiple interpretations, is not ambiguous. And the circuit court was wrong to think so. One last point on this. The circuit court also felt that the amendment, the 2023 amendment, should be read retroactively. There is no legal basis for this. Under Section 4 of the statute, on statutes, the, an Illinois statute can only be applied retroactively when the legislature expressly says so. It didn't do that here. Now, the defendant argues that Section 4 applies only to late-line substantive changes in the law. Well, you know, I don't think it offers any aid to the defendant because Section 22.1 establishes the substantive rights of condominium buyers and sellers with regard to the provision of Section 22.1 materials. And lastly, I would say, this court has recognized that the legislature's postponement of an effective date is direct evidence that a retroactive application was not intended. And that's exactly what we have here. Signing the law on May 27, 2022, didn't go into effect until January 1, 2023. The legislature did not intend a retroactive application. So, if this court has no other questions, for all these reasons, we would ask that this court reverse the decisions of the circuit court and the appellate court and remand the case back to the circuit court for further proceedings. Thank you, Mr. Castiglione. Thank you, Your Honor. Mr. Sterling. Thank you, Mr. Chief Justice, and may it please the court. This court in Channon just a few years ago decided unequivocally that Section 22.1 is not intended to benefit sellers of condo units. It's intended to protect buyers and encourage disclosure. The test there, the first Metzger test, whether the statute intends to protect the plaintiff's class, echoes the first Robinson factor, in this case, just set a little bit differently. The first Robinson factor, and the one upon which plaintiff relies on, is whether the acts of the plaintiff offend public policy. What's the public policy that plaintiff points to? The only thing plaintiff points to as a public policy is Section 22.1C, which this court addressed thoroughly in Channon. Because of the way this case came, Channon came to this court on a certified question, this court was not able to go and proceed to the full Consumer Fraud Act analysis because there was a claim for Consumer Fraud Act in that case as well. So, counsel, given that this is a claim pursuant to the Consumer Fraud Act, what factors should we be looking at and how would you analyze those? So, under the Robinson factors, and I think the one the plaintiff focuses on is whether there's an offense of public policy and the public policy as lined out by Section 22.1C regarding the reasonable fee, an association may charge a reasonable fee for its out-of-pocket costs for providing the documents. So, looking at that, the reasoning of Channon applies here. Well, did the appellate court apply the Robinson factors? The appellate court didn't go through them directly, but the reasoning... What did they apply? Well, there were two reasons for the appellate court's holding. One is it looked at that there's no implied right of action pursuant to this court's holding in Channon, and therefore, it did not believe that there should be a right of action in tort or under the Consumer Fraud Act. But the second reasoning was the same as the circuit court, which is looking at Section 22.1C and seeing the amendment of Section 22.1C enacted by the legislature. That clarifies the meaning of reasonable fee, and it shows that the charges involved in this case would be within what's contemplated as reasonable by the legislature. But the thing the appellate court did with regard to its first holding as to looking at the Channon court, the decision of this court in Channon, is it led to... It did not go through how it affected the Robinson factors. And we can see that the appellate court didn't analyze it in that way, but the Horace court, which decided this decision in the Seventh Circuit, did analyze it in that way. And it got to do with what this court wasn't able to do in Channon. Looking at Horace, the court first goes through the exact same analysis as this court did in Channon under the Metzger test, and it decided that, no, looking at the intent of the statute, the intent of the legislature, the public policy is that it's supposed to protect condo buyers and encourage disclosure. And because of that, there could be no implied cause of action because plaintiffs weren't the class that the statute was intended to protect. But the Seventh Circuit got to build upon that and deal with the Consumer Fraud Act count in that case. And the way that did it, the way the Seventh Circuit did that is, I think, the way that it should be looked at in this case. It says, given our analysis of whether to imply a right of action, that the statute's not intended to protect these plaintiffs. That's the public policy we're concerned with. And because there's no statute intended to protect these plaintiffs there, then there's no public policy that is offended under the Consumer Fraud Act necessary to allow for an unfair practice under the Consumer Fraud Act. And on top of that, Horace points out that the defendants here are property management companies, not the associations. The Condo Act doesn't have any duties or regulate actual property management associations. Section 22.1 and other statutes within the Condo Act regulate associations and members of associations and boards of managers. Section 22.1C permissively allows the association to charge its reasonable costs in providing these disclosure documents so that the cost is borne by the seller, not the association. And that encourages the ability for the sellers to disclose to buyers the necessary information. There's nothing about what a property management company can or cannot do in Section 22.1C. And the association under Section 18.4 of the Condo Act, it has a fiduciary duty for all the duties and obligations identified by law in the Condo Act. So the remedy for a plaintiff to look at is not for a suit against a property management company that provides a service in its business of compiling and distributing these documents in its role as an agent. The remedy would be take it up with your condo association because that statutory duty is not delegated to the association itself. The property manager may get authority from the association to aid in fulfilling the association's duties, but the duty remains with the association. And that's illustrated by a case that Hora cites that's an appellate court case of Henderson versus the Lakes Association. On top of that, there's another big issue here that's not well explained in our brief because this is something that the plaintiff brought out on appeal in the reply brief. This whole act of part agency role from Landau versus Landau. Now, Landau in this argument wasn't raised in the opening brief, but it was briefed very heavily in the motion to dismiss in the circuit court. And since we didn't have a chance to respond to that, I would refer the court to the briefing on this issue at C544 through 46 and the record at C968 through 971 in the record. Where we deal with this argument very directly. Landau versus Landau had a statement in dicta about the agent's not liable unless it takes an active part. The argument made by the plaintiff here is that turns vicarious liability on its head. That if the agent plays a part in a violation of the duty of the principal, then the agent is personally liable even though it's the duty of the principal, not its own duty that's breached. That's not Illinois law. There's an appellate court case, Bovan versus American Family, that's cited in the briefing that I just referred to in the record. That talks about this whole issue of the misunderstanding of this dicta from Landau versus Landau, this 1955 case. And how what came of it is not Illinois law. Rather, agency law in Illinois is that an agent is not liable for breach of the duties of the principal. It's the principal who's liable for those duties. And that's also held in the employment context by this court in a case of Buckner versus Atlantic Plant Maintenance, 182 A.L. 2nd 12 at 22, a 1998 decision of this court. Where this court specifically rejected the, quote, active wrongdoer theory of agency liability there. The case was brought where a suit was against an agent of the employer for wrongful termination. And the court said, well, no, the ability to hire and fire is with the employer. Even if the agent has the authority to do it on behalf of the employer, the duty and the authority remains with the employer. So any liability would not be of the agent personally or directly. It would be of the employer. So this whole active part argument that is brought in the reply brief, it's just not good law. It's not an accurate statement of what agency law is. Here, if you just look at the statute, interpret the statute, how can it offend the public policy of what a management company charges when the statute does not deal with management companies and agencies? Rather, it talks about the association's costs. And what's the association's costs and functionally how this works? It's what they would have to end up paying the property manager to do it. So in that way, what the property manager charges a plaintiff, here a condo seller, is the exact cost of the association. So it meets the statute. Moving to the retroactivity argument, there's no retroactive application of the statute. This court, in several decisions, has acknowledged if there's a controversy going on about a given statute, and then there's an amendment, the court can look at that to see if that is a clarification of what the statute means. And it's presumed if that the legislature knows of any sort of controversy involving that when they amend the statute. When the statute was amended here, you had the Seventh Circuit decision in Horace, which was in 2019. You had a 2019 first district appellate opinion in this case where they granted the certified question, then issued an opinion saying it was improvidently granted, and there was a dissent that disagreed with Horace. And you had the Channon Appellate Court decision before this court dealt with it that diametrically opposed Horace. But with the amendment to the statute, there was a specific date that was included as to when it applies. How do we consider that? Well, the statute does apply as the date it's effective. But what we're looking at is not applying the new words of the statute. It's an interpretive tool to determine what the legislature's meaning was in the prior version. And that's exactly what the legislature did here by setting out specific amounts, amounts which the charges that are involved in this case would fall within. Is it fair to, as counsel mentioned, that this is seven years later? You know, this fee, the reasonableness of that fee needs to be judged in 2016, not in 2023. I mean, do you think it's fair to even use that to interpret what a reasonable fee is? Well, so one, I still say the reasonable fee is from the association, not the property management company. But if you look at it from a time analysis, you know, it's a very close amount. And I don't think the right way to look at it is exactly is this the right dollar amount or not. But before it was kind of open-ended as reasonable. That description in the current statute shows that this is not what we're dealing with here. It isn't reasonable or offends the public policy of what the legislature meant by implementing that statute. Rather, it's very consistent with that. And I think it's also important to look at not just what the legislature did, but what the legislature didn't do. All this was going on, did the legislature decide to put in an express cause of action in Section 22.1C? No. Did the legislature decide to apply 22.1C expressly to managing agents? No. It left it with the association. Did the legislature decide to add Section 22.1 as one of the 31 statutes that's listed in Section 2Z of the Consumer Fraud Act that says violations of these 31 statutes shall be an unfair practice? No, they didn't do that at all. And, you know, pardon my Latin, but the court could use expressio unis exclusio alterius to say, you know, by not adding this statute to one of those that's identified by the Consumer Fraud Act as an underlying sufficient violation, then the legislature didn't intend to do that. But regardless, you still have a situation where the association has the duty. Section 18.4 grants them their fiduciary duty. What the legislature did with this amendment, which is the same as what it was before, is, okay, there is a remedy if you have a problem with the association violating this statute, however it's done. You take it up with the association based on their fiduciary duty that's found in Section 18.4. There's no statutory or other grounds to sue the managing agent for the association's duties. One thing I'd like to mention is the Kay Miller v. McGinnis case. And that's the case that this court had that very specifically looked at what the ability to construe a statute as clarifying, even after there was an appellate court opinion in that case, there was an amendment to the statute that clarified what the statute meant and it presumed that the legislature understood what was going on at that time, that legislature removed references to unlawful, and it made a specific cause of action reference to adding this evaluation of this as recoverable under the Consumer Fraud Act. So if the legislature sees a dispute and there's an issue as to whether something's compensable under a private right of action or specifically the Consumer Fraud Act, it knows how to add that and to clarify that in that statute. So there's two grounds of reasoning that the Kay Miller case is important here. So ultimately, I think this is a fairly simple analysis and it's done in a paragraph or two in chorus. This court decided the first part that Horace decided in Channon. It couldn't decide the second part as the Consumer Fraud Act. This court should coincide and analyze it the same way that Horace did, that there's – because this statute doesn't protect the plaintiffs here and especially it doesn't create any duty of property managers versus associations, there's no offense of public policy and therefore there's no unfair practice under the Consumer Fraud Act. There are no allegations of deception here. So if there's no – nothing that offends public policy, no unfair practice because the statute is not a public policy that's offended here, then there can be no Consumer Fraud Act claim. And that's why the circuit court and appellate court have correctly issued judgment that fines the Consumer Fraud Act claim should be dismissed. Thank you, Mr. Sterling. Thank you. Mr. Castiglione. I think one of the things I heard just now is a conflating of the holding in Channon that Section 22.1 was enacted for the benefit of condo buyers with the notion that there's no public policy in Section 22.1 that affects the seller's transaction. That's apples and oranges. Those are two different things. I think I stated no less than four public policies that 22.1 does implicate, the standardization of the 22.1 documents given to buyers, completeness, uniformity, affordability, the legislature eliminating the cost for sellers to purchase them, availability, eliminating the cost makes it more likely that sellers can afford the documents to make them available to condo buyers. And, you know, one of the things I would really want to, if the legislature in its amendment wanted to just make it a $375 fee across the board, they could have done. They didn't have to mention anything about fees at all. They could have put a number in. They could have put nothing in. No. But both before and after the amendment, it was a reasonable fee for direct out-of-pocket costs. That has not changed. That is the language. What the defendant is asking for is basically for this court to read that out of the statute. To point out, this is, we're here on a section 2615 motion to dismiss. You know, there are a number of arguments the defendant has made about, you know, the fee is reasonable. That's a question of fact. You know, you could have gotten the documents elsewhere. At most, that's a question of fact. I would argue it runs counter to the statute, but it's certainly not something that involuntary dismissal on 2615 can be based on. Now, it's true, we did not raise Horst in our opening brief. We raised it in the reply brief in response to their argument in the Apple East brief that, hey, these duties under 22.1 go to the HOA. They didn't go to us. And that's why Landau is so important. I know I just heard a plaintiff say, well, it's just dicta. Well, that was the rule from that case, and it's an important rule. Because otherwise, without it, you could have situations like the one here where the HOA, maybe the HOA, certainly the property managers, can hide the ball, can charge an exorbitant fee and say, oh, hey, that was the duty on the HOA, not us. Well, but we're the ones that produce the documents, that collect the fees, that sell the 22.1 documents. You know, we're bringing a fraud claim here, a consumer fraud claim. And, you know, the idea that an agent can be liable for active wrongdoing in violation of duties that the HOA owed to condo sellers, that's Landau, that's good law. We would urge this Court to affirm that. And, you know, Horst, that was the Seventh Circuit trying to figure out what this Court would decide in terms of interpreting the consumer fraud act. They're not the final word. This Court is. And Landau already, I think, has an impact on your decision here. I would urge this Court to follow it. And I don't see this controlling. In fact, I don't think, like I said, I don't think it can be squared with Landau, and I think Landau is the better case and the better policy. I'm not sure. I think that might be all I have. So, Your Honors, for all those reasons, again, I would ask this Court to reverse the decisions of the appellate and the circuit court and remand for further proceedings in the trial court. Thank you, Counsel. Thank you, Your Honor. Case number 132-101, Greenswag v. Lieberman Management Services, Inc., is taken under advisement as agenda number eight. Mr. Castiglione, Mr. Sterling, the Court thanks you for your arguments.